```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO.  08-61274-CIV-COHN
                                    MAGISTRATE JUDGE P. A. WHITE
CLEVELAND JONES,              :
     Plaintiff,               :
v.                            :           REPORT OF
                                       MAGISTRATE JUDGE
MONICA DAVID, et al.,         :
     Defendants.              :
_____
```

In this pro se civil rights action pursuant to 42 U.S.C. §1983, which was transferred to this District, the plaintiff Cleveland Jones brought suit for damages, in relation to the revocation of his conditional release in 2007. (See DE#23 in this case, with attached docket sheet and DE#s 1-22 from the Northern District of Florida). The initial complaint (DE#1) and First Amended Complaint (DE#6) named Monica David, Commissioner Chairman of the Florida Parole Commission, and seven other persons as defendants. After entry of an Order by the Honorable Allan Kornblum, United States Magistrate Judge (DE#13) requiring plaintiff Jones to further amend, Jones filed a superseding second amended complaint (DE#14) naming Tony Porter, a Florida Department of Corrections Probation Specialist, as the sole defendant. Upon a Report and recommendation by Judge Kornblum the case be transferred to this District (Report DE#18; Order DE#22; Transfer Memo DE#23).

When the record was received in this Court, and assigned Case No. 08-62274-Civ-Cohn, the action was listed by the Clerk on the CM/ECF docket as pending against all eight defendants who had been named in the initial complaint and first amended complaint, despite the fact that only Tony Porter was named in the second amended complaint (DE#14) which is the operative pleading in the case. The U.S. Marshal was only directed to obtain Service of Process upon the defendant Porter (Order DE#24).

**This Cause is before the Court upon the defendant Porter's Motion for Summary Judgment (DE#36),** with supporting exhibits (DE#s 35-2 through 35-4), as to which the plaintiff Jones was advised of

his right to respond (see Order of Instructions, DE#37).[1] At that time, the plaintiff was no longer confined (see his filing DE#32, listing a street address in Hollywood, Florida). Plaintiff's copy

---

[1] Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interro-
> gatories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue
> as to any material fact, and that the moving party is
> entitled to judgment as a matter of law.

Fed.R.Civ.P. 56©.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Upon the filing of defendant's motion for summary judgment (DE# 36), an Order of Instruction (DE# 37) was entered pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), for the purpose of informing the plaintiff Jones of his right, as a pro se litigant, to respond to the defendant's summary judgment motion. The Order also instructed plaintiff about requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

of the Order of Instructions (DE#37) was mailed to that Hollywood address, which remains his address of record. (See DE#37, p.3). The plaintiff Jones has filed no Response in opposition to Porter's motion for summary judgment. There is no indication that mail sent to the plaintiff was returned to the Court, as undeliverable.

### THE SEVEN DEFENDANTS NOT NAMED IN THE SECOND AMENDED COMPLAINT

Jones' first Amended Complaint (DE# 6) was dismissed in the Northern District for failure to state a claim (see January 18, 2008 Order, located in the record in this case at DE#23, p.106 of 152). As noted supra, although seven of the defendants named in Jones' first amended complaint (DE#6) were not named in the operative second amended complaint (DE#14), when the Northern District record was received and processed in this District, those seven individuals were listed on the CM/ECF docketing system as active parties in this case, rather than "terminated parties." The Clerk should be instructed to modify the CM/ECF docket to reflect a "terminated" status as to those seven defendants. They are: Tracie Crawford, Revocation Specialist; James McDonnough, DOC Secretary; Johnnie Jones, Classification Officer at Martin C.I.; Mr. Skipper, Warden at Martin C.I.; Frederick B. Dunphy, Commissioner Secretary of the Florida Parole Commission; Tena M. Pate, Commissioner Vice-Chairman of the Florida Parole Commission; and Monica David.

### THE DEFENDANT TONY PORTER

As noted in the Report (DE#25) entered upon initial screening of the second amended complaint, plaintiff Jones alleges that FDOC probation officer Tony Porter violated his constitutional rights when he allegedly was forced to submit to a urine test after the expiration of his period of conditional release, and was arrested when the urine sample tested positive for cocaine. Upon the entry of that Report (DE#25), and an Order of partial dismissal (DE#31), First and Eighth Amendment claims raised by Jones were dismissed; and the case remains pending against defendant Porter only on the claim that Jones' Fourth Amendment rights were violated. (Jones' claim is based on his belief and contention that his Conditional

Release was set to last only 8 months, starting October 26, 2006, and ending June 26, 2007. He claims that the urine sample, which was collected and tested on July 3, 2007, therefore was taken after the time that his Conditional Release terminated, and that his resulting warrantless arrest was unlawful).

In his motion, the defendant Porter argues that the second amended complaint against him should be summarily dismissed because there was cause for Jones' warrantless arrest, and because he (Porter) is entitled to qualified immunity.

In support of his motion DE#36, Porter submitted several documents: his own Affidavit (DE#35-2), a composite exhibit consisting of documents relating to Jones' Conditional Release (DE#35-3), and a transcript of Plaintiff Jones' 1/29/09 Deposition (DE#35-4).

## Law Pertaining to Probable Cause, False Arrest, and Qualified Immunity

Although a warrantless arrest without probable cause violates a person's constitutionally protected liberty interest, and forms the basis for a section 1983 claim, Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11 Cir. 1990); Motes v. Meyers, 810 F.2d 1055 (11 Cir. 1987), the Constitution does not guarantee that only the guilty will be arrested, Baker v. McCollan, 443 U.S. l37 (l979), and the existence of probable cause is an absolute bar to a section 1983 action for false arrest, Marx v. Gumbinner, supra, 950 F.2d at 1506, and cases cited therein.  Moreover, the fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. Marx, supra, 950 F.2d at 1507; Mills v. Town of Davie, 48 F.Supp.2d 1378, 1380. Probable Cause "requires more than mere suspicion, but does not require convincing proof." Bailey v. Board of County Commiss'rs of Alachua County, 956 F.2d 1112, 1120 (11 Cir. 1992). See also Rankin v. Evans, 133 F.3d 1425, 1435 (11 Cir. 1998) (quoting State v. Scott, 641 So.2d 517, 519 (Fla. 3 Dist. 1994) ("The facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as to the facts necessary to support a conviction")).

The definition of probable cause is well established, see, e.g., United States v. Elsoffer 671 F.2d 775 (11 Cir. 1982), and it has been long recognized that probable cause to arrest exists where the facts and circumstances within an arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient for a man of reasonable caution to believe that an offense has been or is being committed. Hunter v. Bryant, 502 U.S. 224, 229 (1991); Draper v. United States, 358 U.S. 307, 311 (1959); United States v. Herzburn, 723 F.2d 773, 775 (11 Cir. 1984); United States v. Kye Soo Lee, 962 F.2d 430, 435 (5 Cir. 1992).  The validity of an arrest is not vitiated, and an arresting officer is not stripped of entitlement to qualified immunity on a claim of false arrest so long as there was probable cause to arrest for some offense. See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11 Cir. 2002) (validity of an arrest does not turn on whether the offense for which there was probable cause was announced to the individual at the time of his/her arrest, nor does it turn on whether the offense was cited in the officer's arrest report); Stachel v. City of Cape Canaveral, 51 F.Supp.2d 1326, 1331 (M.D.Fla. 1999) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made ...then the arrest was supported by probable cause, and the claim for false arrest fails") (quoting Wells v. Bonner, 45 F.3d 90, 95 (5 Cir. 1995)).

Moreover, the existence of circumstances in which an arresting officer has only *arguable* probable cause, if not actual probable cause, is sufficient for a defendant officer to be entitled to qualified immunity. See Lee v. Ferraro, 284 F.3d 1188, 1195 (11 Cir.2002); Scarborough v. Myles, 245 F.3d 1299, 1302 (11 Cir.2001). Arguable probable cause exists where reasonable officers in  the same circumstances, and possessing the same knowledge as the defendant officer(s) could have believed that probable cause existed to arrest. Scarborough, supra, 245 F.3d at 1302. In making the determination whether arguable probable cause exists, the Court must apply an objective standard, asking whether the officer's actions are reasonable, regardless of the officer's underlying intent or mo-

tivation. Vaughn v. Cox, 264 F.3d 1027, 1036 (11 Cir. 2001); Montoute v. Carr, 114 F.3d 181, 184 (11 Cir. 1997). Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, because to do so would negate the concept of probable cause and transform officers into prosecutors. Scarborough, at 1302-03.

### Analysis

The record shows that plaintiff Jones was released on 10/26/06 on Conditional Release ("CR") from Martin Work Camp (Porter Affid., ¶5), and was placed CR status until 7/27/07. The "Certificate of Conditional Release and Terms and Conditions of Supervision" was signed by the plaintiff on 10/18/06, with his signature on each page of the document, certifying, *inter alia*, his acknowledgment of various terms and conditions, including a 7/27/07 end date for his period of CR, and other terms including that he was not allowed to use or possess narcotics, that he was subject to random drug testing and monthly drug testing, and was not to associate with persons engaging in criminal activity. (DE#35-3, pp. 1-4). A Notice captioned "Notification Release with Supervision to Follow," with Martin Work Camp as the release facility, was generated on 10/17/06 for the attention of the "P&P Intake Supervisor," listing Jones' "Release Date" as 10/26/06, and listing his "FPC Max Date" as 2007/07/27. (DE#35-3, p.5). That 10/17/06 Notice [DE#35-3, p.5], and the Certificate of Conditional Release (DE#35-3, pp.1-4) were provided to the defendant Probation Specialist Porter, who was assigned to supervise Jones while he was on CR status. (Porter Affid., ¶¶4-9).

The record shows that Defendant Porter met with Jones on 11/1/06, and at that time Porter reviewed with Jones the 10/17 Notice showing the 2007/7/27 "FPC Max Date," and also reviewed with Jones the "Certificate" which Jones had signed on 10/18 listing all the terms and conditions of his conditional release. Porter carefully instructed Jones about those requirements, "by going through the entire certificate and explaining all the conditions of his release." Porter states that he was also "careful to instruct Mr. Jones that his conditional release ran until July 27, 2007." Porter states that in order to emphasize that point to Jones he (Porter) put a "handwritten circle" around the "FPC Max Date: 2007/07/27" in order that "Mr. Jones would make no mistake about the ending date

of his supervision." During that 11/1/06 meeting with Jones, Porter specifically informed Jones that he was subject to random urinalysis testing, and that at the time of each of his monthly reports he would be required to provide a urine specimen. He reminded Jones that he was not allowed to possess narcotics, drugs, or marijuana unless prescribed by a physician, and reminded him of the requirement that he "shall not knowingly associate with any person who is engaging in any criminal activity." Porter had Jones acknowledge his understanding of these things by having him sign and date the certificate on page 4 of the document. (Porter Affid., at ¶¶4-9). From his November 1, 2006 meeting with Porter, Jones' signature and the date "1/11/06" appear near the bottom of the last page of the Certificate, to the right and slightly above Jones' signature that he had affixed to the same document some two weeks before, at Martin Work Camp, on October 18, 2006. (DE#35-3, p.4).

On July 3, 2007, plaintiff Jones reported to Probation Specialist Porter's Office for a monthly visit, and on that date gave a urine sample. (Porter Affid., DE#35-2, ¶10). Porter field-tested it, and Jones' urine tested positive for cocaine. (Id.). Porter noted the result on the appropriate laboratory form (Porter Affidavit, at ¶10; Laboratory Form DE#35-3, p.6).

On July 3, 2007, when Jones' sample field-tested positive, Porter informed him of that result. Jones denied using cocaine, but told Porter that he "did associate with his brother Charles Jones who was using cocaine via a marijuana cigarette." (Porter Affid., ¶11). Porter states that he arrested Jones without a warrant, based on probable cause that he had violated two conditions of his conditional release: 1) using cocaine [based on Jones' positive urine field-test], and 2) knowingly associating with a person engaged in criminal activity [based on Jones' statement that he associated with his brother who was using cocaine and marijuana]. After arresting Jones, Porter contacted the Hollywood Police Department, and Jones was taken to jail. (Porter Affid., ¶¶10-13).

Thereafter, on July 3, 2007, Porter packaged and sent Jones' urine sample to the Department's contract laboratory for further testing, and six days later on July 9, 2007, the laboratory test

7

result came back positive for cocaine benzoylecgonine. (Porter Affidavit, at ¶10; Laboratory Form DE#35-3, p.7).

Under Florida law, any parole or probation officer, when he or she has reasonable ground to believe that a parolee, control releasee, or conditional releasee has violated the terms and conditions of his or her parole, control release, or conditional release in a material respect, has the right to arrest the releasee or parolee without warrant and bring him or her before one or more commissioners or a duly authorized representative of the Parole Commission or Control Release Authority. §947.22(2) Fla.Stat. (2007). The law further provides that proceedings shall thereupon be had when a warrant has been issued by a member of the commission or authority or a duly authorized representative of the commission or authority. Id..

In this case, defendant Porter believed that he had probable cause to arrest, based on his knowledge and experience that the field-test kit rarely rendered a false positive result for cocaine. Porter states that in his 19 years of service, of approximately 200 urinalysis tests conducted by him in his office that were positive for cocaine, he can recall only one instance in which the follow-up laboratory testing did not confirm a positive field-test result for cocaine. (Porter Affid., ¶14). After arresting Jones, Porter prepared and signed a Violation Report, which his supervisor, Julie Eveslage, also signed. (Id. ¶15). The Violation Report listed two violations: possession of a controlled substance, and knowingly associating with a person engaged in criminal activity. On July 3, 2007, it was faxed with a cover letter to the Florida Parole Commission in Tallahassee. (Porter Affid., ¶15; DE#35-3 at pp.8-10). That same day, the Commission issued a Parole Commission Warrant for Jones (captioned "Warrant for Retaking Conditional Releasee") for filing with proper authorities, with a copy to Porter for Jones' file. (Porter Affid., ¶16; DE#35-3, pp.11-12).

Plaintiff's deposition transcript reveals that he knew that while he was on conditional release he was subject to alcohol and drug testing (DE#35-4, Depo., T/16). At deposition, Jones stated his belief that when he walked out of prison (Martin Work Camp) on October 26, 2006, he had eight months to serve on Conditional

Release. He stated his belief that, therefore, his period of supervision should have ended on June 26, 2007. (Depo. T/12-15). Plaintiff, however, acknowledged at deposition that he signed the Certificate of Release [10/18/06] prior to his release from prison (Depo. T/8-9, 15-16), and he acknowledged that the Certificate referred to the ending date of his Conditional Release as July 27, 2007. He states that he did not notice this when he signed the document. (Depo. T/10, 24). He acknowledged that he probably got a copy of the document, but that he couldn't remember (Depo. T/24-25). At deposition, Jones stated that some months before the July 3, 2007 visit with his Supervisor Porter, he brought up to Porter his belief that his Conditional Release was to end eight months from his 10/26/06 prison release (or on or about June 26, 2007) and not the July 27, 2007 date listed on the Certificate of Conditional Release. He states that he did so on more than one visit (Depo. T/23-26). At deposition, plaintiff Porter was asked why he appeared for a visit with Probation Specialist Porter on July 3, 2007, if his period of supervision had ended on June 26, 2007, as he contended, and he responded that he appeared because he was asked to do so. (Depo., T/21-22). He further stated that each time that stated his belief to Porter that his supervision was to end in June 2007, and not on July 27, 2007, Porter told him that the 7/27/07 end date was correct. (Depo., T/22-24).

Here, it is apparent that the defendant Porter had actual probable cause to arrest his Conditional Releasee Jones. Even if, assuming *arguendo*, it could be argued that the defendant Porter lacked actual probable cause, it is apparent that he had at the very least arguable probable cause to arrest in this case. (Porter had received a copy of the 10/17 Notification, and a copy of the "Certificate of Conditional Release and Terms and Conditions of Supervision" which Jones signed before release from prison, both listing Jones' date for the end of his Conditional Release as July 27, 2007. Under the circumstances, a reasonable officer could believe that Jones' termination date was July 27, 2007, and could believe that Jones was still under supervision on July 3, 2007, when he appeared for a visit, and gave a urine sample that tested positive for cocaine. A reasonable officer, in the circumstances faced by Porter, also could have believed that Jones had breached the terms and conditions of his Conditional Release, based on Jones'

9

admission to Porter during their July 3, 2007 meeting, that he had associated with his brother who was using cocaine and marijuana, and in further light of Jones' positive field-test result which Porter's experience indicated to him was approximately 99.5% accurate).

## CONCLUSION

It is therefore recommended that: 1) the defendant Porter's motion for summary judgment (DE#36) be Granted; 2) the clerk be instructed to modify the CM/ECF docket to show that the defendants David, Pate, Dunphy, Crawford, Jones, Skipper, and McDonough are listed as "terminated" parties; and 3) this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: October 9th, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Cleveland Jones, Pro Se
2658 Fletcher Court
Hollywood, FL 33020

David J. Glantz
Assistant Attorney General
OFFICE OF ATTORNEY GENERAL
110 S.E. 6th Street, 10th Floor
Fort Lauderdale, FL 33301-5001